IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STEVEN L. BRENNER, | ) | CIVIL NO. 10-00113 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| vs. | ) | |
| | ) | |
| INDYMAC BANK, F.S.B.; | ) | |
| ONE WEST BANK, F.S.B.; <u>et al.</u>, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |

<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

I.        <u>INTRODUCTION.</u>

On March 2, 2010, <u>pro se</u> Plaintiff Steven L. Brenner
("Brenner") filed a complaint against Defendants IndyMac Bank,
F.S.B. ("IndyMac"), and OneWest Bank, F.S.B. ("OneWest"),
alleging violations of the Truth in Lending Act ("TILA"), the
Real Estate Settlement Procedures Act ("RESPA"), and Hawaii
Revised Statutes § 656-1, entitlement to injunctive relief, and
damages for intentional infliction of emotional distress.  On
August 11, 2010, OneWest filed a motion for summary judgment,
arguing that Brenner's claims are either time-barred or
meritless.  The court agrees and accordingly grants OneWest's
motion for summary judgment.

II.       <u>BACKGROUND FACTS.</u>

On or about November 29, 2007, Brenner executed a
promissory note ("Note") in the principal amount of $819,000.00

in favor of IndyMac as lender.  Compl. ¶ 8, ECF No. 1.  The Note

was secured by a first priority mortgage ("Mortgage") encumbering

Brenner's property on Kukuki Street, Kailua Kona, Hawaii.  Compl.

¶¶ 9, 14.  On or about November 29, 2007, Brenner signed, dated,

and acknowledged receipt of a completed copy of an Adjustable

Rate Mortgage Loan Program Disclosure, a Truth-in-Lending

Disclosure Statement, and a Notice of Right to Cancel.  See

Compl., Exs. B, C, I.  Brenner also received a HUD-1 Settlement

Statement and an Itemization of Amount Financed Statement for the

loan.  See Compl., Exs. D, E.

The Mortgage was executed in favor of Mortgage

Electronic Registration Systems, Inc. ("MERS"), as the nominee of

IndyMac as lender.  Compl. ¶ 14; Ex. A.  MERS assigned the

Mortgage to OneWest, the current holder of the Note.  Decl. of

Charles Boyle ("Boyle Decl.") ¶ 4, ECF No. 33.  In July 2008, the

Federal Deposit Insurance Corporation ("FDIC") took control of

IndyMac's assets and established a bank conservatorship entity,

IndyMac Federal Bank, F.S.B. ("IndyMac Federal").  Boyle Decl.

¶ 10.  On March 19, 2009, OneWest acquired certain assets of

IndyMac Bank and IndyMac Federal that included the rights to

service Brenner's loan.  Boyle Decl. ¶ 11.

On January 13, 2010, OneWest recorded and served

Brenner with a Notice of Mortgagee's Intention to Foreclose Under

Power of Sale.  This document listed a foreclosure auction date

of March 3, 2010.  <u>See</u> Compl. ¶ 17; Ex. F.  A month later, Brenner filed a Consumer Complaint with the Office of Thrift Supervision.  <u>See</u> Compl. ¶ 18.  On February 25, 2010, and March 1, 2010, Brenner sent OneWest and IndyMac, respectively, a letter purporting to rescind his loan.  Compl. ¶ 12; Exs. H, N.  OneWest denied Brenner's request for rescission through a letter dated April 2, 2010.  Boyle Decl. ¶ 13; Ex. J.

On March 2, 2010, Brenner filed the present Complaint, asserting claims for: (1) recoupment and set-off for violations of TILA; (2) statutory damages for violations of RESPA; (3) judgment declaring the Note, Mortgage, and nonjudicial foreclosure process void; (4) an injunction preventing a nonjudicial foreclosure sale; and (5) damages for intentional infliction of emotional distress.  <u>See</u> Compl., ECF No. 1.  On August 11, 2010, OneWest moved for summary judgment.  <u>See</u> ECF No. 32.  On August 27, 2010, Brenner filed his motion to deny summary judgment.  <u>See</u> ECF No. 39.  On September 15, 2010, Brenner filed a motion to strike and motion to deny OneWest's motion for summary judgment.  <u>See</u> ECF No. 42.  While parties do not have the right to file two oppositions to the same motion, the court construes Brenner's initial and subsequent motions to deny summary judgment collectively as his opposition.

III.     LEGAL STANDARD.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex, 477 U.S. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit

4

under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Miller, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." <u>Miller</u>, 454 F.3d at 988 (quotations and brackets omitted).

IV.    <u>ANALYSIS.</u>

A.      Summary Judgment is Granted in Favor of
        <u>OneWest on the TILA Claim (Count I).</u>

The Truth in Lending Act, 15 U.S.C. §§ 1601-51, "is designed 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" <u>Barrer v. Chase Bank USA, N.A.</u>, 566 F.3d 883, 887 (9th Cir. 2009) (quoting 15 U.S.C. § 1601(a)).  Under TILA and its implementing regulations, absolute compliance by creditors is required, and "'[e]ven technical or minor violations of the TILA impose liability on the creditor.'" <u>Rubio v. Capital One Bank</u>, 613 F.3d 1195, 1199 (9th Cir. 2010) (quoting <u>Hauk v. JP Morgan Chase Bank USA</u>, 552 F.3d 1114, 1118 (9th Cir. 2009), and <u>Jackson v. Grant</u>, 890 F.2d 118, 120 (9th Cir. 1989)).

1.      The Recoupment and Disclosure
        <u>Claims Fail as a Matter of Law.</u>

In Count I, Brenner alleges recoupment and set-off claims in violation of TILA.[1]  TILA makes recoupment available

_____

[1] Brenner's Complaint and other filings are notarized and purport to contain true statements.  Although Brenner's filings do not expressly state that they are made under penalty of

6

only as a "defense" in an "action to collect a debt."  15 U.S.C.
§ 1640(e).  See Roach v. Option One Mortg. Corp., 598 F. Supp. 2d
741, 757 (E.D. Va. 2009) ("§ 1640(e) recognizes the fundamental
difference between a borrower's initiation of a lawsuit by filing
of a claim, which must occur within one year, and the defensive
assertion of a TILA violation in an action brought by a TILA
creditor, which a borrower may make at any time in response to
the creditor seeking payment of the debt.").  As the Fifth
Circuit puts it, a plaintiff asserting a right to recoupment must
show that "(1) the TILA violation and the debt are products of
the same transaction, (2) the debtor asserts the claim as a
defense, and (3) the main action is timely."  Moor v. Travelers
Ins. Co., 784 F.2d 632, 634 (5th Cir. 1986) (internal citations
omitted); see also Agustin v. PNC Fin. Servs. Group, 707 F. Supp.
2d 1080, 2010 WL 1507975, at *18 n.2 (D. Haw. Apr. 15, 2010).  As
Brenner is not here raising recoupment as a defense in an action
to collect a debt, his recoupment claim fails.

        In Count I, Brenner also alleges that OneWest violated
TILA in three ways:  by failing to provide required disclosures,
see Compl. ¶¶ 40-41; by failing to include, or by improperly
including, certain loan terms in its disclosures, see Compl.

---

perjury or otherwise conform to the usual format for affidavits
or declarations, the court treats Brenner's factual allegations
(but not his legal assertions) as if made under penalty of
perjury, to the extent they appear to be based on personal
knowledge.

¶¶ 42-45, 54; and by concealing disclosures for unaccounted
funds, see Compl. ¶¶ 46-50.  TILA requires lenders to make
various disclosures in certain consumer credit transactions.  See
15 U.S.C. § 1638(a).  TILA generally requires these disclosures
to be "made before the credit is extended" or "before
consummation of the transaction."  15 U.S.C. § 1638(b)(1); 12
C.F.R. § 227.17(b).

Brenner claims that OneWest did not disclose in the
proper manner the finance charge, general disclosures,
preliminary disclosures, and Itemization of Amount Financed.  See
Compl. ¶ 40.  Brenner also claims that the following pre-
disclosure materials are missing or ineffective:  TILA Statement,
HUD-1 Settlement Statement, and Good Faith Estimate/Itemization
of Amount Financed.  See Compl. ¶ 41.

The Truth in Lending Disclosure Statement issued to
Brenner explicitly states, "You are giving a security interest
in: Your property."  See Compl., Ex. C.  The TILA Statement
provides Brenner with the annual percentage rate, finance charge,
and monthly pay schedule.  Id.  All the required terms of the
loan, including the number, amount, and due dates of payments,
are also set forth.  Id.  OneWest establishes, and Brenner does
not provide persuasive contrary evidence, that the HUD-1
Settlement Statement and Itemization of Amount Financed were also
properly provided and given to Brenner.

8

Brenner alleges that OneWest concealed unaccounted-for funds, as some of the fees do not indicate to whom the charges were paid.  Compl. ¶¶ 47-49.  For example, Brenner argues that the HUD-1 and Itemization of Amount Financed forms are fraudulent because charges are allegedly duplicated.  Compl. ¶ 50.  On the HUD-1 Settlement Statement, Item 1003 (Esc Other Rsv) has a charge of $206.49, and Item 1005 (Cnty Prop Taxes) has a charge of $1,211.82.  See Compl., Ex. D.  On the Itemization of Amount Financed form, Item 1004 (Property Tax Reserves) is $1.211.82, and Item 1007 (Escrow Other Insurance Reserves) is $206.49.  See Compl., Ex. E.  While the item numbers are not identical, the descriptions for the amounts and the amounts themselves are the same.  Moreover, the HUD-1 Settlement statement explains that these charges are "Reserves Deposited With Lender," paid from the borrower's funds at settlement.  See Compl., Ex. D.  Both the HUD-1 Settlement Statement and the Itemization of Amount Financed properly disclose the required fees, charges, and transactions. See Compl., Exs. D, E.  The HUD-1 Settlement Statement states that "[t]he undersigned read and understands the Controlled Business Arrangement Disclosure Statement."  See Compl., Ex. D. The Itemization of Amount Financed indicates that the itemization was "made pursuant to the requirements of the Truth-in-Lending Simplification Act."  See Compl., Ex. E.

The only arguable violation that Brenner identifies

9

concerns the Notice of Right to Cancel.  He complains that one copy of the Notice of Right to Cancel has a typewritten transaction date of November 26, 2007, corrected by hand and initialed to be November 29, 2007, while three other Notices of Right to Cancel bear the uncorrected typewritten dates.  See Compl. ¶ 54.  Brenner claims that the notices therefore violate the TILA provision at 15 U.S.C. § 1635(a).  See id.  The Notice of Right to Cancel that Brenner signed bears the corrected date of settlement.  See Compl., Ex. I.  The Notice of Right To Cancel identifies the transaction as "a transaction that will result in a mortgage, lien or security interest on/in your home."  See Compl., Ex. I.  It explains that if the borrower cancels the loan, the lender must "return any money you have given to us or anyone else in connection with this new transaction."  Id.  The document that Brenner signed states that the borrower must submit notice that he is exercising his right of cancellation by December 3, 2007.  Id.  The Notice also states: "Receipt of Notice.  I hereby acknowledge that the transaction identified on the face of this Notice was consummated and that I have received one (1) copy of the Federal Truth in Lending Disclosure and two (2) copies of this Notice."  Id.  Brenner signed and dated the Notice on November 29, 2007.  See id.  The Notice uses the language from the rescission model form in Appendix H of

10

Regulation Z, the TILA regulations.  <u>See</u> 12 C.F.R. § 226.15, App.
H.

Although Brenner's Complaint refers to three
incorrectly dated copies of the Notice of the Right to Cancel,
his Complaint attaches only one copy with the uncorrected
typewritten date.  Brenner cites no statutory requirement that he
receive a total of four copies.  In any event, at the hearing on
the present motion, this court questioned Brenner about whether
he was claiming a right to rescind under TILA, and he confirmed
that he was not.  Rather, he said he was seeking rescission only
as a common law fraud remedy.  The court therefore does not read
the Complaint as asserting a right of rescission based on the
allegedly incorrect transaction date on one copy (or three
copies) of the Notice of Right to Cancel.  The court notes,
moreover, that the Complaint does not appear to contain a claim
for rescission under TILA.  While, as noted above, even a
technical or minor TILA violation imposes liability on a
creditor, Brenner apparently is not seeking a TILA rescission
remedy.  The court addresses below the separate issue of money
damages under TILA for the allegedly inaccurate date on one or
more copies of the Notice of Right to Cancel.

 2. TILA Money Damages Claims Are Time-
    <u>Barred Under 15 U.S.C. § 1640(e).</u>

Brenner was required to file any claims for money
damages under TILA "within one year from the date of the

11

occurrence of the violation." 15 U.S.C. § 1640(e). When a TILA violation is based on an insufficient disclosure, the limitation period generally "starts at the consummation of the [loan] transaction." <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir. 1986); <u>see also</u> <u>Hubbard v. Fidelity Fed. Bank</u>, 91 F.3d 75, 79 (9th Cir. 1996) (holding that when a lender fails to comply with TILA's initial disclosure requirements, a borrower has one year from obtaining the loan to file suit). To the extent Brenner seeks money damages for TILA violations arising out of the September 2007 loan, those claims are barred by the one-year statute of limitation, as Brenner did not file his Complaint until March 2, 2010.

Courts may extend the period if the one-year rule would be unjust or would frustrate TILA's purpose. <u>King</u>, 784 F.2d at 915. For example, if a borrower had no reason or opportunity to discover the fraud or nondisclosures that form the basis of a borrower's TILA claim, the court may toll the statute of limitations. <u>Id.</u>; <u>see also</u> <u>Meyer v. Ameriquest Mortg. Co.</u>, 342 F.3d 899, 902-03 (9th Cir. 2003) (refusing to toll the statute of limitations on a TILA claim because the plaintiff was in full possession of all loan documents and did not allege any concealment of loan documents or any other action that would have prevented discovery of TILA violations). In this case, Brenner does not identify a genuine issue of material fact as to whether

any information was concealed or whether he was somehow prevented from discovering any potential TILA claim.  For example, with respect to the allegedly inaccurate date on one or more copies of the Notice of Right to Cancel, Brenner does not show that he was presented from immediately discovering the discrepancy, especially as he knew the date he signed the loan documents and as the copy he signed had the correct date.  It therefore appears that any TILA money damage claim arising out of the allegedly incorrect date on one or more copies of the Notice of Right to Cancel is time-barred.  See Blanco v. Am. Home Mortg. Serv., Inc., No. 09-578, 2009 WL 4674904, at *3 (E.D. Cal. Dec. 4, 2009) (finding equitable tolling inapplicable, as the plaintiff failed to offer facts demonstrating how the plaintiff's mortgage were concealed, and did not explain "what prevented her from later reviewing the loan documents, which she admittedly was given at closing").  Brenner's TILA claims for damages against OneWest are therefore time-barred.

At the hearing, the court asked Brenner whether he was asserting a money damage claim under TILA for Defendants' failure to rescind (a claim possibly separate and apart from any claim relating to the different dates stated on the copies of the Notice of Right to Cancel).  Brenner conceded that no TILA rescission claim at all was asserted in the Complaint.  Accordingly, this court need not determine whether such a claim

is time-barred.  See Miguel v. Country Funding Corp., 309 F.3d
1161, 1164 (9th Cir. 2002) (noting in dicta that "that 15 U.S.C.
§ 1640(e) provides the borrower one year from the refusal of
cancellation to file suit").

   B.   Summary Judgment is Granted in Favor of
           OneWest on the RESPA Claim (Count II).

   The Real Estate Settlement Practices Act ("RESPA"), 12
U.S.C. §§ 2601 to 2617, and its implementing regulations, 24
C.F.R. Part 3500, known as Regulation X, prohibit mortgage
lenders from taking kickbacks and unearned fees or collecting
certain prohibited charges.  12 U.S.C. §§ 2607, 2610.  RESPA also
requires mortgage lenders to provide borrowers with certain
disclosures.  12 U.S.C. §§ 2603-05.  RESPA applies to "federally
regulated mortgage loans," which RESPA defines as including most
loans secured by residential property.  See 12 U.S.C. § 2602(1).

   Brenner alleges that OneWest violated RESPA because
"the broker was paid a $6,142.50 Yield Spread Premium".  See
Compl. ¶ 57.  According to Brenner, this is "suspect or excessive
closing costs/fees that may be actionable for treble damages
pursuant to 12 U.S.C. § 2607."  Id.  Any action pursuant to the
provisions of § 2607 must be brought within one year from the
date the violation occurred.  12 U.S.C. § 2614.  The date the
violation occurred is, at the latest, the "date of the closing,
which is a definite and indisputable date known to potential
plaintiffs and defendants."  Diana I Am v. Nat'l City Mortg. Co.,

No. 09-060, 2010 WL 571936, at *8 (D. Haw. Feb. 10, 2010)

(citations omitted).  In the present case, closing occurred on

November 29, 2007.  Brenner filed suit in March 2, 2010, clearly

more than one year after the alleged violation of RESPA.

Accordingly, OneWest is granted summary judgment with respect to

the RESPA claim.

        C.        Summary Judgment Is Granted with Respect to
                  the Claim under Hawaii Revised Statutes
                  § 656-1 (Count III).

        In Count III, Brenner appears to allege a violation of

the Statute of Frauds pursuant to Hawaii Revised Statutes

§ 656-1 because there is no "signature on the part of agent for

the lender on the Note and Mortgage."  Compl. ¶¶ 61, 77, 80.

        Hawaii Revised Statutes § 656-1 states in pertinent

part:

        No action shall be brought and maintained in
        any of the following cases:

        . . .

        (8) To charge any financial institution upon an
        agreement by the financial institution to lend money or
        extend credit in an amount greater than $50,000;

        unless the promise, contract, or agreement, upon which
        the action is brought, or some memorandum or note
        thereof, is in writing, and is *signed by the party to
        be charged therewith*, or by some person thereunto by
        the party in writing lawfully authorized. . . .

Haw. Rev. Stat. § 656-1 (emphasis added).  Brenner is the

mortgagor under the Mortgage and the obligor under the Note.

Accordingly, he is the "party to be charged therewith," and the

Statute of Fraud requires only his signature on the Note and Mortgage.  <u>See</u> <u>People's Ice & Refrigerating Co. v. Hawaiian Elec.</u> <u>Co.</u>, 1894 WL 3192, *2 (Haw. S. Ct. 1894) ("The statute [of frauds] requires the contract to 'be signed by the party to be charged therewith.'").

Brenner appears to conflate his Statute of Frauds claim with a common law fraud claim.  He says that what appears to be his signature is not a "true and correct signature" because of "fraud, undue influence, and lack of full disclosure."  <u>See</u> Compl. ¶ 75.  Brenner, however, does not allege facts demonstrating fraud, undue influence, or lack of full disclosure sufficient to invalidate his signature.  At the hearing, Brenner claimed that his signature was not "authorized" on the Note.  His Complaint, however, admits that he himself executed the Note and security agreement.  <u>See</u> Compl. ¶ 8.  Brenner nowhere even alleges, much less provides evidence of, any duress or coercion that caused him to sign the Note.  He does not say that someone else actually signed the Mortgage.  In short, he raises no question of fact concerning either a Statute of Frauds claim or a common law fraud claim.

D.      Summary Judgment Is Granted with Respect to Brenner's Demand for "Original Documents" (Count IV).

In Count IV, Brenner seems to demand the original Note and Mortgage to verify OneWest's standing to sue and foreclose or

exercise a power of sale contract.  See Compl. ¶¶ 87, 94.  This claim has no merit.

With respect to the Mortgage, Brenner can go to the State of Hawaii's Bureau of Conveyances to view the original Mortgage and the subsequent assignment to OneWest.  See Boyle Decl., Exs. B, C.  In his Complaint, Brenner acknowledges that the Mortgage was recorded in the Bureau of Conveyances.  See Compl. ¶ 14.  No law requires a lender to show a borrower an "original" mortgage, as opposed to, say, the certified copy that Brenner himself attaches to his Complaint.

With respect to the Note, Brenner waived his right to the presentment of the original Note pursuant to the express terms of the Note.  See Compl., Ex. B ¶ 10 ("I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  'Presentment' means the right to require the Note Holder to demand payment of amounts due.").  If the lender did not have to even demand payment to proceed under the Note, it is hard to see how it was required to produce the original Note.  Brenner admits in his Complaint that he signed and delivered the Note to IndyMac, and he attaches a copy of the Note to his Complaint.  See Compl. ¶ 13; Ex. B.

In arguing that OneWest must produce the original Note and Mortgage, Brenner cites Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.  See Compl. ¶ 94.  Rule 34, which concerns

17

the production of documents in discovery rather than in loan transactions, does not require production of original documents. The copies provided are adequate for purposes of this motion. OneWest submits the Declaration of Charles Boyle, an employee and Assistant Vice President of Default Litigation of OneWest.  See Boyle Decl., ECF No. 33.  The Declaration states that the copies offered are true and accurate copies of the originals.  See Boyle Decl. ¶¶ 2, 3.  Brenner does not claim that the copies are altered.  Given these circumstances, the copies suffice as evidence, and the absence of originals does not affect any party's rights.  Accord Moore v. Greene, 431 F.2d 584 (9th Cir. 1970).

E.        Injunctive Relief Is Not Warranted (Count V).

In Count V, Brenner seeks to enjoin a nonjudicial foreclosure sale.  Brenner alleges "great and irreparable injury" if the property to which he allegedly has "lawful claim and right" is sold at foreclosure.  Compl. ¶ 102.  Brenner states no ground on which this court can base any equitable remedy.  The court previously denied Brenner's Motion to Restrain Nonjudicial Foreclosure because Brenner failed to provide the factual and legal bases for an injunction.  See ECF No. 18.  As Brenner continues to provide no facts demonstrating irreparable injury or warranting injunctive relief, summary judgment on Count VI is granted to OneWest.

F.        Summary Judgment Is Granted to Onewest with
          Respect to the Intentional Infliction of
          Emotional Distress Claims (Count VI).

In Count VI, Brenner alleges intentional infliction of
emotional distress ("IIED").  "In Hawaii, the elements of an
action for intentional infliction of emotional distress are
adopted from the Restatement (Second) of Torts § 46 (1965) and
are: 1) that the conduct allegedly causing the harm was
intentional or reckless, 2) that the conduct was outrageous, and
3) that the conduct caused 4) extreme emotional distress to
another."  Long v. City and Cnty. of Honolulu, 511 F.3d 901, 908
(9th Cir. 2007) (citing Hac v. Univ. of Haw., 102 Haw. 92, 95, 73
P.3d 46, 49 (2003)).

Brenner claims:

> The Defendants acts of using general
> expression and other false and misleading
> information like the word "Loan," and
> breaching or voiding the contract by not
> signing and consenting to the obligation of
> the contract, then still foreclosing on
> defective documents, thereby foreclosing
> without just cause, are performed
> intentionally or with reckless disregard for
> the truth and Plaintiff's rights.

Compl. ¶ 106.  Brenner claims he suffered "sleeplessness,
irritability with the family and associates, and severe
nervousness."  Compl. ¶ 109.

Brenner presents no evidence of intentional, reckless,
or outrageous conduct by OneWest.  OneWest holds a validly
executed Note and Mortgage and has the right to foreclose its

19

interest given Brenner's undisputed default of his obligations under the Note and Mortgage.  OneWest's use of the word "Loan" does not qualify as an outrageous act.  Nor is there any evidence that OneWest failed to sign any document it was required to sign.

V.        CONCLUSION.

        For the foregoing reasons, the court grants OneWest's motion for summary judgment.  However, because Brenner is proceeding pro se in this action, this court delays entry of judgment.  Unless by December 8, 2010, Brenner files a motion to file an amended complaint, judgment will be automatically entered.  Brenner is free to refrain from filing such a motion. If Brenner files such a motion by December 8, 2010, he should attach to his motion a proposed amended complaint that is a complete document in itself.  That is, it may not incorporated by reference the original Complaint.  It may, but need not, attach exhibits such as loans documents.  Any such motion will be decided by the Magistrate Judge.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 9, 2010



                    /s/ Susan Oki Mollway
                    Susan Oki Mollway
                    Chief United States District Judge


Brenner v. IndyMac Bank, F.S.B; One West Bank, F.S.B. et al., Civ. No. 10-00113 SOM/BMK; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.